**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **DAVID GRIGGS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | No. 1:15-cv-00070-SLC |
| | ) | |
| **CITY OF FORT WAYNE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Griggs filed this 42 U.S.C. § 1983 suit against Defendants the City of Fort Wayne ("the City") and Fort Wayne Police Officers John Greenlee and John Chavez (together, "the Officers") on March 18, 2015, after an encounter with the Officers on June 8, 2013, that resulted in Griggs's arrest for disorderly conduct and public intoxication.[1] Griggs advances claims against the Officers for false imprisonment and false arrest in violation of his right under the Fourth Amendment to be free from unreasonable seizure; retaliation in violation of the First Amendment;[2] failure to intervene to prevent a civil rights violation; and false imprisonment and false arrest in violation of Indiana state law. Griggs also contends that the City is liable under a theory of *respondeat superior* for the alleged false imprisonment and false arrest committed by the Officers in violation of state law.

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (DE 10).

[2] The Officers contend that Griggs did not advance a First Amendment retaliation claim in his complaint, but the Court rejects that argument for the reasons discussed *infra*.

Now before the Court is Griggs's timely-filed motion for partial summary judgment,[3] together with a supporting brief and exhibits, seeking summary judgment in his favor as to Defendants' liability on all claims. (DE 36; DE 37). Defendants filed a response brief in opposition (DE 38), and Griggs filed a reply brief in support of his motion (DE 39). The matter is now ripe for adjudication. For the following reasons, Griggs's motion for partial summary judgment will be DENIED.

## I. FACTUAL BACKGROUND[4]

### A. Statement of Material Facts

This matter arises out of an encounter between Griggs and the Officers that took place at about 2:00 a.m. on June 8, 2013, in the downtown area of Fort Wayne, Indiana. (DE 38-1 ¶¶ 4-5; DE 38-2 ¶¶ 4-5; DE 35-6 at 4, 6; DE 35-2 at 3). Griggs had just left the beer tent at Fort Wayne's annual Germanfest with his then wife Judy; their adult son, David Nelson Griggs ("Nelson"); Griggs's friend, Tim Bacon; and a few others. (DE 35-6 at 6). Germanfest had just ended for the evening, so there was a crowd of other pedestrians leaving the area as well.[5] (DE 35-3).

The Officers were on duty with the Fort Wayne Police Department ("FWPD") at the time of the encounter. (DE 38-1 ¶ 4; DE 38-2 ¶ 4). Greenlee is a FWPD patrol officer and has been employed as an officer for 19 years. (DE 38-1 ¶ 2). Chavez was a FWPD reserve lieutenant at

---

[3] The discovery period has closed (DE 25), and the dispositive motions deadline was January 20, 2017 (DE 33).

[4] For summary judgment purposes, the facts are recited in the light most favorable to Defendants, the nonmoving parties. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citation omitted).

[5] Germanfest is a annual festival in Fort Wayne at which patrons commonly drink alcohol throughout the day and into the evening. (DE 38-1 ¶ 6; DE 38-2 ¶ 6).

the time, and has been employed as an officer for 13 years. (DE 38-2 ¶ 2). Based on their experience, the Officers knew that it was not uncommon for an individual to be impaired when leaving Germanfest. (DE 38-1 ¶ 6; DE 38-2 ¶ 6).

The Officers were in full police uniform and in a marked squad car, which Greenlee was driving; the windows were down in the squad car. (DE 38-1 ¶ 4; DE 38-2 ¶ 4; DE 35-3). They were driving westbound (either on Duck Street or in a parking lot) towards the Allen County Jail, intent on pulling out onto southbound Clinton Street. (DE 38-1 ¶ 5; DE 38-2 ¶ 5; DE 35-3; DE 35-4). Before doing so, the Officers had to stop and wait for the pedestrian traffic, which was heavy due to Germanfest having just ended. (DE 38-1 ¶ 6; DE 38-2 ¶ 6). Many of the pedestrians stopped, creating a 12-foot gap in traffic, and Greenlee let the squad car idle through the gap, which crossed the sidewalk. (DE 38-1 ¶ 7; DE 38-2 ¶ 7; DE 35-3; DE 35-6 at 6-7). In doing so, the Officers were "yelling out at some pedestrians." (DE 35-6 at 6-7).

As the squad car was progressing through the gap in the crowd, Chavez heard and saw Bacon (who was walking with Griggs) shout "fucking cops" while looking at Chavez. (DE 38-2 ¶ 7; DE 35-4). Greenlee just heard a male voice on Chavez's side of the car shout "fucking cops"; at some point later, Greenlee concluded that it was Griggs who had shouted. (DE 38-1 ¶ 8; DE 35-3). In any event, Greenlee stopped the car, and both Officers exited the vehicle, intent on speaking with the man who had shouted. (DE 38-1 ¶ 9; DE 38-2 ¶ 8; DE 35-3; DE 35-4). The Officers approached Griggs and Bacon, stating something to the effect of, "What did you call us?" (DE 35-6 at 7). Griggs, perceiving the Officers' conduct as "aggressive," began shouting to the crowd to film the interaction between him and the Officers, yelling "film this guys" and "I'm going to film this." (DE 38-1 ¶ 10; DE 38-2 ¶ 9; DE 35-3; DE 35-4; DE 35-6 at

8). Chavez began speaking with Griggs and Bacon; Bacon was very calm, but Griggs continued to shout and be unruly. (DE 35-3; DE 35-4; DE 38-1 ¶¶ 11, 13; DE 38-2 ¶¶ 10, 12). The Officers observed that Griggs had red, watery eyes and that he smelled of alcohol. (DE 38-1 ¶ 12; DE 38-2 ¶ 11; DE 35-4).

Greenlee asked Griggs and Bacon for their identification. (DE 38-1 ¶ 14; DE 38-2 ¶ 14). Bacon produced his without a fuss, but Griggs refused to produce his. (DE 35-11 at 1). Greenlee asked Griggs a second time to produce his identification, but again Griggs did not comply. (DE 35-11 at 1). Instead, Griggs pulled out his cellphone and started recording the Officers, shouting to his son, Nelson, to do the same. (DE 35-4; DE 35-6 at 7; DE 35-11 at 1). Finally, on Greenlee's third request, Griggs produced his identification. (DE 38-1 ¶ 14; DE 38-2 ¶ 14; DE 35-3; DE 35-4).

Greenlee took the identification back to the squad car to copy down the men's information, and Chavez waited with Griggs and Bacon. (DE 38-1 ¶ 15; DE 38-2 ¶ 15). During this time, Griggs continued to rant and shout, becoming increasingly agitated. (DE 38-1 ¶ 15; DE 38-2 ¶ 16). The Officers told Griggs several times to calm down and lower his voice, but he did not comply. (DE 38-1 ¶ 19; DE 38-2 ¶¶ 17-18; DE 35-4; DE 35-11 at 1). The majority of his shouts were directed at the crowd of approximately 40 to 45 people that had stopped to watch the incident. (DE 38-1 ¶ 15). The crowd that had gathered to watch the encounter slowed the flow of pedestrian traffic leaving Germanfest. (DE 38-1 ¶ 16).

When Greenlee returned the identifications to Griggs and Bacon, Greenlee reminded the two men that there were better ways to conduct themselves in public. (DE 38-1 ¶ 17). Bacon agreed, but Griggs did not. (DE 38-1 ¶ 17). Griggs proclaimed that he did not have to be quiet;

he then called Greenlee a "fucking asshole" and stated that "[he was] tired of this mother fucker." (DE 35-4; DE 38-2 ¶ 18; DE 38-1 ¶¶ 18-19; DE 35-11). Griggs also shouted to his wife to call his lawyer.[6] (DE 35-3; DE 35-4; DE 35-11). Finally, Chavez ordered Griggs to stand up and place his hands behind his back, informing him that he was under arrest for disorderly conduct; Chavez then handcuffed Griggs. (DE 38-4; DE 38-2 ¶ 19; DE 35-11).

No field sobriety tests were performed on Griggs. (DE 35-3; DE 35-4; DE 35-11). However, Greenlee determined, based on Griggs's appearance, odor, and behavior throughout the encounter, as well as the time and location of the encounter, and based on Greenlee's training and experience, that Griggs was showing signs of impairment. (DE 38-1 ¶ 20; DE 38-2 ¶ 12). Griggs was arrested for both disorderly conduct and public intoxication. (DE 35-3; DE 35-5; DE 35-6; DE 38-1 ¶ 20; DE 38-2 ¶ 21).

After the arrest, the Officers transported Griggs to the lock up, where he refused to give a breath sample. (DE 38-1 ¶ 21; DE 38-2 ¶ 21; DE 35-3; DE 35-4; DE 35-11). Because of this refusal, the Officers transported Griggs to St. Joseph Hospital for medical clearance pursuant to FWPD policy. (DE 38-1 ¶ 21; DE 38-2 ¶ 21; DE 35-3; DE 35-4). At St. Joseph Hospital, Griggs refused to be treated by the medical staff. (DE 38-1 ¶ 22; DE 38-2 ¶ 21; DE 35-9 at 3-4). No blood alcohol testing was performed, and no evidence of intoxication was documented by the medical staff. (DE 35-9 at 3-4). Griggs presented as polite, with a normal mood and affect; he was "alert, oriented to person, place, and time." (DE 35-9 at 3-4). He denied taking any medications or having any medical problems. (DE 35-9 at 3-4). The Officers told the

---

[6] Griggs's wife, Judy, had been walking about three car lengths ahead of Griggs at the time of the encounter; she did not hear much of the encounter, though she sometimes could hear Griggs's voice increasing in volume. (DE 35-8 at 7).

emergency room doctor that Griggs was under arrest for disorderly conduct, but they did not mention the public intoxication charge. (DE 35-9 at 3). The medical clearance was given for Griggs to go back to the lock up. (DE 35-9 at 7).

On September 7, 2013, the charges of public intoxication and disorderly conduct against Griggs were dismissed. (DE 35-5 6 at 2).

### B. Cell Phone Videos of the Encounter

In support of his motion, Griggs submits two cell phone videos of the encounter—one taken by Griggs and the other taken by Nelson, who was standing approximately 20 feet away. (DE 34; DE 35-10). These videos begin at some point during the encounter, and thus, they capture some, but not all, of the Officers' interaction with Griggs. (DE 38-1 ¶¶ 23, 24; DE 38-2 ¶¶ 22, 23). Because of Griggs's and Nelson's vantage points, the videos also do not capture the crowd that stopped to watch the incident or Griggs's eyes, which were red and watery. (DE 38-1 ¶ 22; DE 38-2 ¶ 23). Additionally, not all of the dialogue in the videos is discernible.

The discernible, relevant dialogue in the videos is summarized as follows:

| | |
|---|---|
| Officer: | "No, your I.D." |
| Griggs: | "I'll get my I.D." |
| Officer: | "I need your I.D. . . . I need your I.D." |
| Griggs: | "I'm getting my I.D." |
| Officer: | "You're not getting your I.D." |
| Griggs: | "I'm getting my I.D." |
| Officer: | "Where's your I.D.? You're not giving me your I.D." |
| Griggs: | "No, you're being an asshole. It's right here. You've seen it." |

| Officer: | "I'm being an asshole? You are calling me an asshole? Why you calling me an asshole? Give me your I.D." |
|---|---|
| Griggs: | "Right here." |
| Officer: | "Give me your I.D. I need it out of your wallet. You shouldn't call me an asshole on camera." |
| Griggs: | "I can call anyone an asshole I want." |
| Officer: | "You can, but it's not very nice there Mr. Griggs." |
| Griggs: | "That's right it's not nice. Why are you stepping on me! |
| Officer: | "I need to get to my car please." |
| Griggs: | "You don't push me! I didn't do anything wrong!" |
| Officer: | "Why don't you have a seat before I put you in handcuffs. Have a seat or I put you in handcuffs." |
| Griggs: | (While seated) "We didn't do anything wrong. We're walking down here. You guys are just being jerks." |
| Officer: | "Yep. We heard what he said. Right?" |
| Griggs: | "I don't know what he said, but . . do you have a thin skin or something? What is your problem?" |
| Griggs: | "Judy, call Bruce Stier. Call him right now. Judy, . . . go in the parking lot and call my lawyer, right now! Judy, . . . walk away, call the lawyer. Right now, Bruce Stier, call his cell." |
| Griggs: | "I want to talk to your supervisor." |
| Officer: | "For what?" |
| Griggs: | "I want to talk to your supervisor." |
| Officer: | "For what?" |
| Griggs: | "Call him now. I am requesting you call your supervisor. Call your supervisor, you fucking asshole!" |

| Officer: | "I've had about enough of you." |
| Griggs: | "Call your supervisor.  Call your supervisor." |

(DE 34; DE 36 at 7-9).  At this point the video becomes jumbled, and any further dialogue is not discernable.

## II.  LEGAL STANDARD

On a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder."  *Id.* (citations omitted).  The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted.  *Payne*, 337 F.3d at 770.  A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true[,]" as "summary judgment cannot be used to resolve swearing contests between litigants."  *Id.* (citations omitted).  However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial."  *Id.* at 771 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## III.  FOURTH AMENDMENT CLAIMS

To prove a claim under § 1983, Griggs "must show two elements:  (1) the party against whom the claim is brought qualifies as a 'person acting under the color of state law'; and (2) the conduct alleged amounted to a deprivation of rights, privileges, or immunities under the Constitution or the laws of the United States."  *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 397 (7th Cir. 2015) (citations omitted).  There appears to be no dispute that the Officers were acting under color of state law during the encounter.  Thus, Griggs's § 1983 claims under the First and Fourth Amendments turn on whether he can establish the second element—a violation of his rights.  The Court will first turn to Griggs's claims under the Fourth Amendment.[7]

### A.  The Fourth Amendment

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Seventh Circuit Court of Appeals has recognized that there are "three categories for police-citizen encounters in relation to the Fourth Amendment."  *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir. 1990).  "Not all police/citizen encounters implicate fourth amendment concerns."  *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir. 1990) (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  The three categories are:  (1) an arrest, which "requires that police have probable cause to believe a person

---

[7] Griggs refers to his Fourth Amendment claims in terms of "false imprisonment" and "false arrest," but he does not distinguish between the two claims.  (DE 1; DE 36; DE 39).  As a result, it is unclear whether he is alleging false imprisonment and false arrest as two separate claims or as a single claim.  To the extent that the false imprisonment claim stems from his arrest, the Court will simply refer to his claim as one of false arrest.  To the extent that his false imprisonment claim relates to the investigatory stop, the Court will simply address whether the Officers had reasonable suspicion for the stop, as Griggs does not challenge the scope or duration of the stop.

has committed or is committing a crime"; (2) an investigatory or *Terry* stop, "which is limited to a brief, non-intrusive detention," and which requires that an officer "have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime"; and (3) a consensual encounter, which "involves no restraint on the citizen's liberty," and which "is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning." *Johnson*, 910 F.2d at 1508 (citations omitted).

An arrest is a seizure under the Fourth Amendment; an investigatory stop is a more limited seizure under the Fourth Amendment; and a consensual encounter is not a seizure at all under the Fourth Amendment. *Id.*; *see also United States v. Rice*, 995 F.2d 719, 723 (7th Cir. 1993). In a consensual encounter, "the degree of suspicion that is required is zero." *Johnson*, 910 F.2d at 1508 (citations and internal quotation marks omitted).

### B. Summary Judgment Will Be Denied as to Griggs's Fourth Amendment Claims Arising from the Investigatory Stop

Griggs first argues that no reasonable jury could dispute that his initial encounter with the Officers was an investigatory stop and that the stop was unlawful, because there was no reasonable suspicion to believe that he had committed a crime. The Officers, however, assert that the interaction began as a consensual encounter that evolved into an investigatory stop. The Officers alternatively contend that even if the encounter began as an investigatory stop, it did not violate the Fourth Amendment because it was supported by reasonable suspicion.

Griggs also argues that his arrest was unlawful because there was no probable cause to believe that he had committed a crime. The Officers disagree, arguing that probable cause existed to arrest Griggs for both disorderly conduct and public intoxication, and in any event, probable cause for either of the charges is sufficient.

1. <u>Applicable Law Regarding a Consensual Encounter Versus an Investigatory Stop</u>

It is clear that "not every police encounter implicates the Fourth Amendment. A seizure within the meaning of the Fourth Amendment takes place if, in view of all the circumstances surrounding the incident, a reasonable person would not believe that he was free to leave." *United States v. Shields*, 789 F.3d 733, 743 (7th Cir. 2015) (citing *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *United States v. Drayton*, 536 U.S. 194, 201 (2002)). To determine whether a reasonable person would believe he was free to leave, and thus whether an encounter with police is consensual or is a seizure, courts consider the following factors:

> (1) whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents [he] needed to continue on [his] way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed.

*Id.* (citation omitted).

"[M]ere police questioning does not constitute a seizure" under the Fourth Amendment; "police may approach persons and ask questions or seek their permission to search, provided that the officers do not imply that answers or consent or obligatory." *United States v. Childs*, 277 F.3d 947, 950 (7th Cir. 2002) (citations omitted). Furthermore, an officer's "mere request for identification does not change a voluntary stop, which is outside the purview of the Fourth Amendment, into an investigatory stop." *Shields*, 789 F.3d at 744 (citing *Bostick*, 501 U.S. at 437; *INS v. Delgado*, 466 U.S. 210, 216 (1984)).

An encounter that is initially consensual "can develop into an investigatory stop

depending upon the conduct of the investigating officers." *United States v. Scheets*, 188 F.3d 829, 837 (7th Cir. 1999) (citing *United States v. Odum*, 72 F.3d 1279, 1283 (7th Cir. 1995)). Police conduct that can convert a consensual encounter into an investigatory stop is behavior that would cause a reasonable person in the situation to no longer believe that he was free to leave. *See United States v. Hendricks*, 319 F.3d 993, 1000-01 (7th Cir. 2003) (finding that the initial consensual encounter had developed into an investigatory stop when police cars blocked in the defendant's vehicle on three sides); *Scheets*, 188 F.3d at 837 (finding that an officer's statement that the individual was not free to leave the security office caused the encounter to ripen into an investigatory stop).

Where a formerly consensual encounter becomes an investigatory stop, a reviewing court must determine whether the stop is supported by reasonable suspicion. Police officers are justified in conducting a brief investigative stop if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21; *see Odum*, 72 F.3d at 1283-84 ("We agree that at this point, a Fourth Amendment seizure occurred, and the question became whether the agents were then aware of articulable facts sufficient to give rise to a reasonable suspicion . . . ."). Although reasonable suspicion requires more than a mere "hunch," it is a measure of suspicion less demanding than that required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In assessing the reasonableness of a *Terry* stop, the facts are "judged against an objective standard: would the facts available to the officer at the moment of seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) (quoting *Terry*, 392 U.S. 21-22).

2.   The Interaction Began as a Consensual Encounter, But It Evolved Into an

Investigatory Stop Supported By Reasonable Suspicion

The Officers assert that their encounter with Griggs and Bacon began as a consensual

encounter.  According to the Officers, after they heard either Griggs or Bacon shout "fucking

cops" while looking at Chavez, the Officers stopped the car, exited the vehicle, and approached

Griggs and Bacon with the intent to speak to the man who had shouted the derogatory words.

Where an officer simply asks if an individual will "step aside and talk with him," this is

"clearly the sort of consensual encounter that implicates no Fourth Amendment interest."

*Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984) (citations omitted).  "[L]aw enforcement officers do

not violate the Fourth Amendment by merely approaching an individual on the street or in

another public place, by asking him if he is willing to answer some questions, [or] by putting

questions to him if the person is willing to listen."  *Shields*, 789 F.3d at 744 (second alteration in

original) (citations omitted); *see United States v. Williams*, 285 F. App'x 284, 287 (7th Cir.

2008) (collecting cases) ("[W]hen the police walk up to someone who is either out on the street

or sitting in a car that was already stopped . . . there is no seizure at all." (citations omitted)).

Furthermore, as stated earlier, "[a] mere request for identification does not change a voluntary

stop . . . into an investigatory stop."  *Shields*, 789 F.3d at 744 (citations omitted); *see United

States v. Cordell*, 723 F.2d 1283, 1285 (7th Cir. 1983) (stating that when officers asked if the

defendant would speak to them and they requested his identification, "they were doing nothing

that could be construed as a Fourth Amendment seizure").

As the Officers were approaching the men, the Officers observed that Griggs began

shouting to a crowd of pedestrians to film the encounter.  Once the Officers began speaking with

Griggs, the Officers observed that he had red, watery eyes and that he smelled of alcohol. Greenlee asked Griggs to produce his identification, but Griggs did not do so until Greenlee had asked three times.

The Officers concede that at this point, the consensual encounter evolved into an investigatory stop—that is, when they observed Griggs's red, watery eyes, and that he smelled of alcohol. Indeed, a reasonable person would likely not feel free to leave when an Officer retained possession of his identification and walked back to his squad card with it. *See, e.g.*, *United States v. Tyler*, 512 F.3d 405, 410 (7th Cir. 2008) (finding a seizure where the officers held onto plaintiff's identification and performed a warrant search); *United States v. Borys*, 766 F.3d 304, 310 (7th Cir. 1985) ("Suspects deprived of their identification are effectively deprived of the practical ability to terminate the questioning and leave." (citations omitted)); *Cordell*, 723 F.2d at 1285 (finding that a consensual encounter became a stop when the officer handed the plaintiff's identification to another officer and told him they were conducting a narcotics investigation); *State v. Augustine*, 851 N.E.2d 1022, 1026 (Ind. Ct. App. 2006) (when the officer first approached the defendant and began speaking with him, it was a consensual encounter, but the encounter evolved into an investigatory stop when the officer noticed a heavy odor of alcohol coming from defendant and that the defendant had difficulty speaking, causing the officer to suspect that the defendant was intoxicated). Thus, the Court must determine whether the investigatory stop conducted by the Officers in this instance was supported by reasonable suspicion that criminal activity was afoot.

The Officers contend that under the totality of the circumstances, and based on their own experience and training, they had reasonable suspicion that Griggs was violating the public

14

intoxication statute. Specifically, the Officers point to: (1) Griggs's red, watery eyes; (2) the smell of alcohol coming from him; (3) Griggs's shouting to the crowd to film the encounter as the Officers were approaching him; (4) that the Officers had to ask Griggs three times for his identification; and (5) that the encounter took place at 2:00 a.m., just outside of the Germanfest beer tent, an event at which many patrons drink alcohol and occasionally become intoxicated.

Even when disregarding Griggs's shouts to the crowd, which could, at least in part, constitute political speech (to be discussed *infra*), the other "specific and articulable facts" in the aggregate rise to the level of reasonable suspicion to justify an investigatory stop so that the Officers could confirm or dispel their suspicions through some form of reasonable investigation. *Jewett v. Anders*, 521 F.3d 818, 823 (7th Cir. 2008) ("To conduct a *Terry* stop, an officer must be aware of specific and articulable facts giving rise to reasonable suspicion." (citation and internal quotation marks omitted)). "[A] court's determination of reasonable suspicion must be based on common-sensical judgments and inferences about human behavior." *Id.* ("Reasonable suspicion is more than a hunch but less than probable cause . . . ." (citation omitted and internal quotation marks omitted)).

The Court first notes that the Officers each had significant law enforcement experience, as Greenlee had 19 years of experience and Chavez had 13 years of experience. *See United States v. Parker*, No. 3:09-CR-148 JD, 2010 WL 2943649, at *5 (N.D. Ind. July 21, 2010) (considering the officers' years of experience in a reasonable suspicion inquiry). Also, the encounter occurred at 2:00 a.m., just outside the beer tent for Germanfest, an event at which the Officers knew many patrons consume alcohol. *See United States v. Caruthers*, 458 F.3d 459, 467 (7th Cir. 2006) (stating that "contextual considerations" are relevant to the reasonable

suspicion calculus (citation omitted)).  According to the Officers, they had to ask Griggs three

times to produce his identification, although the videos are somewhat difficult to discern on this

point.  *See Batchelor v. Fenwick*, 710 F. Supp. 2d 811, 819 (S.D. Ind. 2010) (considering a

defendant's "uncooperative demeanor" in the reasonable suspicion calculus).  According to the

Officers, Griggs had red, watery eyes, and he smelled of alcohol.  *See Gutierrez v. Kermon*, 722

F.3d 1003, 1013 (7th Cir. 2013) (finding that the undisputed facts of disheveled appearance,

possession of a golf club, apparent agitation, lack of cooperation, and red eyes in the aggregate

likely justified a *Terry* stop, but were inadequate to establish probable cause for public

intoxication).

In sum, "[r]easonable suspicion is a lower threshold than probable cause and does not

deal with hard certainties, but with probabilities."  *United States v. Booker*, 579 F.3d 835, 839

(7th Cir. 2009) (citation and internal quotation marks omitted).  When viewing the facts in the

light most favorable to the Officers and affording them every reasonable inference, the totality of

the circumstances known to the Officers at the time were sufficient to give rise to reasonable

suspicion of public intoxication.  Therefore, Griggs's motion for partial summary judgment with

respect to his Fourth Amendment claims arising from the initial encounter will be denied.

### C.  A Material Factual Dispute Precludes Summary Judgment on the False Arrest Claim

Griggs contends that his arrest, too, was unlawful because there was no probable cause to

believe that he had committed a crime.  The Officers disagree, asserting that they had probable

cause to arrest Griggs for both disorderly conduct and public intoxication, and in any event,

probable cause to arrest Griggs for either of the charges is sufficient to defeat his claim.

1. <u>Applicable Law as to False Arrest</u>

"To prevail on a claim of false arrest under § 1983, the plaintiff must show there was no probable cause for his arrest." *Neita v. City of Chi.*, 830 F.3d 494, 497 (7th Cir. 2016) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)). An officer has probable cause to arrest if "at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id.* (alteration in original) (citation omitted). "That determination depends on the elements of the underlying criminal offense." *Id.* (citing *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 622 (7th Cir. 2010)). "A probable cause determination 'relies on the common-sense judgment of the officers based on the totality of the circumstances.'" *Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)).

"If probable cause to arrest is found to exist, it 'is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest.'" *Id.* (quoting *Mustafa v. City of Chi.*, 442 F.3d 544, 547 (7th Cir. 2006)). In fact, "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause[.]" *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citations omitted).

2. <u>The Officers Lacked Probable Cause to Arrest Griggs for Public Intoxication</u>

Under Indiana law, a person commits the offense of public intoxication when he is "in a public place or a place of public resort in a state of intoxication caused by the person's use of

alcohol or controlled substance," if the person "(1) endangers the person's life; (2) endangers the life of another person; (3) breaches the peace or is in imminent danger of breaching the peace; or (4) harasses, annoys, or alarms another person." Ind. Code § 7.1-5-1-3; *see also Gutierrez*, 722 F.3d at 1011; *Tyler*, 512 F.3d at 511. "'Intoxication' essentially means that a person is under the influence of alcohol and/or a controlled substance to the extent that his thoughts or actions are impaired or that he has lost normal control of his faculties." *Gutierrez*, 722 F.3d at 1011 (citing Ind. Code § 9-13-2-86; *Curtis v. State*, 937 N.E.2d 868, 873-74 (Ind. Ct. App. 2010); *Perkins v. State*, 812 N.E.2d 836, 841 (Ind. Ct. App. 2004)). "There is no litmus test for determining whether a person meets this definition[.]" *Id.* However, "common indicia of intoxication include '(1) the consumption of [a] significant amount of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) the odor of alcohol on the breath; (5) unsteady balance; (6) failure of field sobriety test; [and] (7) slurred speech.'" *Id.* (alterations in original) (quoting *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008)). "These are merely indicia of impairment and not all of them need to be present for a person to be deemed impaired (and thus intoxicated)." *Id.* (citing *Woodson v. State*, 966 N.E.2d 135, 142 (Ind. Ct. App. 2012)).

The Officers observed that Griggs displayed two of these common indicia—red, watery eyes and the odor of alcohol. The Officers argue that based on their experience, Griggs's "behavior" and "demeanor" showed signs of impairment, though they do not elaborate with more particularity about what that means. (DE 16 at 25). Presumably, the Officers are referring to Griggs's lack of cooperation in producing his identification, his shouting to the crowd, and his use of derogatory language toward the Officers. Additionally, the Officers emphasize that the encounter occurred in the early morning hours, just outside of the Germanfest beer tent, where in

their experience, many patrons drink alcohol well into the evening. (DE 38 at 22-23). The Officers contend that in their common-sense experience, the totality of these circumstances constitute probable cause to arrest Griggs for public intoxication.

The problem with the two indicia documented by the Officers—red, watery eyes and the smell of alcohol—is that while these indicia may indicate that Griggs had been drinking alcohol, they do not necessarily infer that Griggs was intoxicated. *See Tyler*, 512 F.3d at 411-12 (finding that the defendant's walking down the street on a Saturday afternoon and "lawfully carrying an open beer supports only a suspicion that he was drinking, not that he was drunk"). Notably, the Officers do not argue that Griggs displayed impaired attention or reflexes, unsteady balance, or slurred speech; nor do the videos evidence such behavior, at least with any clarity. No one complained about Griggs's behavior or suggest that he drank a substantial amount of alcohol. The Officers do not know how much alcohol Griggs had consumed, as they did not ask him and they did not administer any field sobriety tests. At the emergency room, personnel documented that Griggs was "polite" with a normal mood and affect; that he "respectfully declined" to answer some questions; and that he was "alert, oriented to person, place, and time." (DE 35-9 at 3-4).

In *Gutierrez*, the Seventh Circuit held that the undisputed facts of Gutierrez's disheveled appearance, possession of a golf club, apparent agitation, lack of cooperation, and red eyes may have supported reasonable suspicion for an investigatory stop, but these facts "come nowhere close to establishing arguable probable cause" for a public intoxication arrest. 722 F.3d at 1011-12. The Court explained that these facts "do not individually or in the aggregate suggest that Gutierrez's thoughts or actions were impaired or that he had lost normal control of his faculties."

19

*Id.* at 1012 (collecting cases). The Court observed that "[t]he only one of these facts commonly associated with intoxication is red eyes, but no reasonable officer could believe that the presence of red eyes without some form of motor or cognitive impairment is indicative of intoxication." *Id.* (*comparing Tyler*, 512 F.3d at 411 (finding no reasonable suspicion to stop the defendant for public intoxication where he was carrying an open container of alcohol, but he was not incoherent, his eyes were not bloodshot, his speech was not slurred, and he was not "stumbling, staggering, wavering, or otherwise unsteady on his feet"), *with United States v. Lenoir*, 318 F.3d 725, 730 (7th Cir. 2003) (finding that the officer had reasonable suspicion of public intoxication to stop the defendant in a high-crime area where the defendant displayed an unsteady gait, carried two guns, fled after the officer identified himself and ordered defendant to stop, and had trouble opening the door to the house in which he fled)). "If it were otherwise, then allergy sufferers and anyone who has recently wept, among others, could be arrested for public intoxication." *Id.* The Court stated that the only way the officer "had a shot" of establishing arguable probable cause is if the disputed fact that Gutierrez had demonstrated an unsteady gait was added to the equation. *Id.*

Here, the Officers seem to suggest that Griggs's filming of the encounter, his shouting to the crowd to film the encounter and his shouting to his wife to call his attorney, and his calling the Officers derogatory names are all evidence of intoxication. But as will be discussed *infra*, the Officers do not dispute that the First Amendment generally protects speech directed at an officer's conduct, as well as filming an encounter or calling an officer derogatory names. (DE 38 at 11). As such, Griggs's actions falling within categories protected by the First Amendment are not a basis upon which to establish probable cause.

The Officers also assert as evidence of intoxication that they had to ask Griggs three times to produce his identification, revealing that Griggs was uncooperative and belligerent. While that may be the case, he still produced his identification within a minute of the Officers' first request, and he sat down promptly when ordered to do so. Furthermore, and perhaps most significantly, there is no evidence that Griggs was swaying or unsteady on his feet, nor do the videos definitively reveal any slurred speech. As such, the Officers fail to identify evidence upon which one could infer that Griggs's "thoughts or actions were impaired or that he had lost normal control of his faculties." *Id.* at 1012; *see generally Terry*, 392 U.S. at 37 ("The term 'probable cause' rings a bell of certainty that is not sounded by phrases such as 'reasonable suspicion.'").

As the Seventh Circuit has repeatedly articulated, "[s]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept [his] version of events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (citation and internal quotation marks omitted). On this record, even when viewing the facts in the light most favorable to the Officers and affording them every reasonable inference, the Officers lacked probable cause to arrest Griggs for public intoxication.

3. A Material Factual Dispute Exists as to Whether the Officers Had Probable Cause to Arrest Griggs for Disorderly Conduct

Under Indiana law, a person commits disorderly conduct when he "recklessly, knowingly, or intentionally: (1) engages in fighting or in tumultuous conduct; (2) makes unreasonable noise and continues to do so after being asked to stop; or (3) disrupts a lawful

assembly of person."  Ind. Code § 35-45-1-3; *see also Hudkins v. City of Indianapolis*, No. 1:13-cv-01179-SEB-DML, 2015 WL 4664592, at *12 (S.D. Ind. Aug. 6, 2015).  Indiana has recognized that there are significant limits on what facts can properly support a disorderly conduct arrest for loud or offensive speech, where the speech is political in nature.  *See, e.g.*, *Shoultz v. State*, 735 N.E.2d 818, 827 (Ind. Ct. App. 2000) ("We reverse the disorderly conduct conviction on the grounds that the noise alleged by the State to be unreasonably loud was political speech by Shoultz and the State produced insufficient evidence that private interests were adversely affected by the speech as required by the Indiana Constitution in such a case.").

Griggs does not dispute that a crowd of 40 to 45 people gathered to watch the encounter and that he was shouting to the crowd to film the encounter, which he urges is a right protected by the First Amendment.  He asserts that the crowd gathered was merely curious, rather than agitated or aggressive, and that there was no obvious or immediate danger that the crowd might become violent or try to interfere with the Officers' duties.  As such, he contends that the Officers lacked probable cause to arrest him for disorderly conduct.

The Officers respond that while some of Griggs's rant was political in nature in that it challenged the Officers' conduct, Griggs also ranted about the behavior of private citizens—that is, himself and Bacon.  He insisted that he did not have to be quiet, that he and Bacon were not doing anything wrong, and that he was tired of the interaction.  *See Whittington v. State*, 669 N.E.2d 1363, 1370-71 (Ind. 1996) (finding that the defendant was not engaged in political expression where his speech was not directed toward the officer, he was proclaiming his own innocence and that other witnesses were lying, and his speech interfered with the officer's investigation of a domestic complaint); *Anderson v. State*, 881 N.E.2d 86, 90 (Ind. Ct. App.

2008) ("[W]here the individual's expression focuses on the conduct of a private party, including the speaker himself, it is not political." (citation omitted)). The Officers contend that they repeatedly asked Griggs to calm down and be quiet (although this request(s) is not discernable on the videos), but that he disregarded their orders and continued to shout, creating a scene and drawing a crowd. *See, e.g.*, *Blackman v. State*, 868 N.E.2d 579, 584 (Ind. Ct. App. 2007) (upholding conviction for disorderly conduct where defendant created a "commotion" that "drew a crowd" and refused the officer's requests to lower her voice). The Officers contend that Griggs's disregard of their orders, his verbal outbursts about the behavior of private parties, and his drawing a crowd create probable cause for the disorderly conduct charge.

The Court finds that material issues of fact exist as to whether the Officers had probable cause to arrest Griggs for disorderly conduct. These issues include: (1) the nature and volume of Griggs's purported verbal outbursts, some of which were not captured on the videos, *see Morfin v. City of East Chi.*, 349 F.3d 989, 998 (7th Cir. 2003) ("Indiana courts have held that 'the volume of [the arrestee's] speech is critical in determining whether it was unreasonable . . . .' (alteration in original) (quoting *Johnson v. State*, 719 N.E.2d 445, 448 (Ind. Ct. App. 1999)); (2) whether the Officers asked or ordered Griggs to lower his voice, and whether Griggs did so—disputed facts which are not resolved by the videos, *see Hudkins*, 2015 WL 4664592, at *12-13 (finding probable cause for disorderly conduct arrest where plaintiff was "speaking loudly and gesturing angrily," had created a scene that attracted numerous spectators, and had refused to "calm down" and lower his voice when the officer requested him to do so); *Radford v. State*, 640 N.E.2d 90, 94 (Ind. Ct. App. 1994) (affirming disorderly conduct conviction where the defendant made unreasonable noise and continued to do so after being asked to stop), and (3) the

effect of Griggs's verbal outbursts on the crowd that had gathered during the encounter, facts which are also not captured by the videos, *see, e.g.*, *Wells v. State*, 848 N.E.2d 1133, 1150 (Ind. Ct. App. 2006) (affirming a conviction for disorderly conduct where the defendant's speech "posed a threat to peace, safety, and well-being").

Due to these issues of disputed material fact, Griggs's partial motion for summary judgment with respect to his false arrest claim will be denied.

## IV.  FIRST AMENDMENT RETALIATION CLAIM

 Griggs argues that he is also entitled to judgment as a matter of law with respect to the Officers' liability on his First Amendment retaliation claim.  More particularly, he asserts that a reasonable jury could only conclude that his exercise of his First Amendment rights was a motivating factor, if not the sole motivating factor, in the Officers' decision to arrest him.

The Officers argue, however, that Griggs is not entitled to summary judgment on a First Amendment retaliation claim for the reason that he never pled a First Amendment retaliation claim in his complaint.  The Officers further argue that even if Griggs had asserted a First Amendment retaliation claim in his complaint, a material factual dispute concerning the Officers' motivations would preclude summary judgment on the claim.

### A.  *Griggs's Complaint Provides Fair Notice*
### *of a First Amendment Retaliation Claim*

As to the Officers' first argument, Griggs concedes that he did not expressly advance a First Amendment retaliation in his complaint.  He asserts, however, that his complaint provides sufficient factual detail to assert a plausible First Amendment retaliation claim, thereby putting the Officers on fair notice of the claim.

"The Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories."

*Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. Aug. 15, 2017)

(quoting *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996)).  "[I]t is factual

allegations, not legal theories, that must be pleaded in a complaint."  *Whitaker v. Milwaukee

Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014).  "Accordingly, when a plaintiff does plead legal

theories, it can later alter those theories."  *Chessie Logistics Co.*, 867 F.3d at 859 (collecting

cases).  "As a general rule, district courts should not hold plaintiffs to their earlier legal theories

unless the changes unfairly harm the defendant or the case's development—for example, by

making it more costly or difficult to defend the case, or by causing unreasonable delay."  *Id.*

(citations and internal quotation marks omitted); *see Whitaker*, 772 F.3d at 808-09 (finding that

the plaintiff should have been permitted to proceed on a new summary judgment theory that

recharacterized the facts in the complaint and did not offer "any unfair surprise").

 Here, Griggs is not attempting to impermissibly change his "*factual* theory during

summary judgment briefing."  *Chessie Logistics Co.*, 867 F.3d at 859.  "An attempt to alter the

factual basis of a claim at summary judgment may amount to an attempt to amend the

complaint."  *Id.* (citation omitted).  The Seventh Circuit Court of Appeals has recently explained:

> When a new argument is made in summary judgment briefing, the
> correct first step is to consider whether it changes the complaint's
> factual theory, or just the legal theories plaintiff has pursued so far.
> In the former situation, the plaintiff may be attempting in effect to
> amend its complaint, and the district court has discretion to deny
> the *de facto* amendment and to refuse to consider the new factual
> claims.  In the latter, the court should consider the consequences of
> allowing the plaintiff's new theory.  If it would, for example, cause
> unreasonable delay, or make it more costly or difficult to defend
> the suit, the district court can and should hold the plaintiff to his
> original theory.

*Id.* at *6 (citations and internal quotation marks omitted).

Rather, Griggs is attempting to assert a new legal theory of First Amendment retaliation. To establish a *prima facie* case of First Amendment retaliation claim, a plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014); *see generally Hartman v. Moore*, 547 U.S. 250, 256 (2006) ("[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." (citation omitted)).

In that regard, Griggs alleges the following in his complaint:  The Officers "had been aggressively talking to a few pedestrians," and when walking by the Officers, one of Griggs's companions "made a derogatory comment to [Griggs] about the [Officers'] behavior."  (DE 1 ¶ 5).  The Officers "overheard and rushed over to [Griggs's] companion," and Griggs "attempted to defuse the situation by telling the [O]fficers his companion was just talking to him and did not mean anything by the comment."  (DE 1 ¶ 5).  The Officers "turned their hostilities toward [Griggs] at this point . . . . and demanded [his] identification."  (DE 1 ¶ 6).  Griggs "pulled out his cell phone and started recording" and "instructed his son, who was with him, to do the same." (DE 1 ¶ 6).  The Officers "responded with further rudeness and aggression" and "proceeded to place [Griggs] under arrest."  (DE 1 ¶¶ 7, 8).  "He was charged with Public Intoxication and Disorderly Conduct, although there was no probable cause to believe he committed either offense."  (DE 1 ¶ 9).

These allegations in Griggs's complaint provide the Officers with fair notice that Griggs was alleging that he was arrested without probable cause either because he had criticized or

objected to the Officers' actions or because he had attempted to record the Officers' actions. As such, a First Amendment retaliation claim is "merely an alternative legal characterization of the complaint's facts." *Chessie Logistics Co.*, 867 F.3d at 861 (citation and internal quotation marks omitted). These alleged facts sufficiently provide the basis of a plausible First Amendment retaliation claim. Therefore, the Officers' first argument in opposition to Griggs's motion for partial summary judgment on his First Amendment retaliation claim is unavailing.

### B. A Material Factual Dispute Precludes Summary Judgment on the First Amendment Retaliation Claim

As already explained, to make out a *prima facie* case of First Amendment retaliation on summary judgment, a plaintiff must show that: (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would like deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the police officer's decision. *Thayer*, 705 F.3d at 251 (citations omitted). The Officers do not dispute that for purposes of this summary judgment motion, Griggs is able to satisfy the first two elements of a First Amendment retaliation claim.

Indeed, as touched upon earlier, speech directed at police officers concerning their official conduct is protected under the First Amendment. *See City of Houston v. Hill,* 482 U.S. 451, 462-63 (1987). "In fact, the First Amendment protects even profanity-laden speech directed at police officers." *Payne*, 337 F.3d at 776 (citation omitted); *Greene v. Barber*, 310 F.3d 889, 892 (6th Cir. 2002) (calling police officer obscene name); *Provost v. City of Newburgh*, 262 F.3d 146, 151-52 (2d Cir. 2001) (same). Likewise, "[t]he right to . . . consult an attorney is protected by the First Amendment's guarantee of freedom of speech, association, and petition . . . ." *Hawkins*, 756 F.3d at 997 (second and third alterations in original) (citations omitted). And

"most courts of appeal, including the Seventh Circuit, have acknowledged that the First

Amendment broadly protects the right to make audio or visual recordings of police activity."

*Hudkins*, 2015 WL 4664592, at *15 (citing *ACLU v. Alvarez*, 679 F.3d 583, 597 (7th Cir. 2012);

*Glik v. Cunniffe*, 655 F.3d 78, 84-85 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332,

1333 (11th Cir. 2000)).  The Officers do not dispute for purposes of the instant motion that some

of Griggs's speech was protected by the First Amendment.  (DE 38 at 11).  Nor do they dispute

that Griggs's arrest satisfies the second element of a First Amendment retaliation claim.  (DE 38

at 11); *see, e.g.*, *Hudkins*, 2015 WL 4664592, at *15 ("Davis undoubtedly suffered the

'deprivation' of arrest[.]" (citing *Thayer*, 705 F.3d at 251)).

　　　The Officers' opposition to the summary judgment motion, rather, centers on the third

element, causation.  To establish that element, "a plaintiff need only show that a violation of his

First Amendment rights was a motivating factor of the harm he's complaining of[.]"  *Thayer*,

705 F.3d at 252 (citations and internal quotation marks omitted).  "[O]nce he shows that[,] the

burden shifts to the defendant to show that the harm would have occurred anyway."  *Id.*

(citations and internal quotation marks omitted).  "Once a defendant produces evidence that the

same decision would have been made in the absence of the protected speech, the burden shifts

back to the plaintiff to demonstrate that the proffered reason was pretextual and that the real

reason was retaliatory animus."  *Id.* (citing *Zellner v. Herrick*, 639 F.3d 371, 379 (7th Cir.

2011)).

　　　Griggs argues that a reasonable jury could only conclude that his exercise of his First

Amendment rights was a motivating factor, if not the sole motivating factor, in the Officers'

decision to arrest him.  Griggs points out that the sole reason the Officers stopped the car and

approached Griggs and Bacon was because of the loud criticisms directed at them by Bacon. Then, as Griggs began to criticize the Officers and call them derogatory names, Greenlee acknowledged Griggs's right to refer to them in that way, but added that "it's not very nice" and that there was a "better way to conduct themselves in public." (DE 34). Griggs further emphasizes that his arrest came quickly on the heels of his starting to film the encounter and his asking his wife to call his lawyer.

The Officers assert, however, that a material factual dispute exists regarding the causation element. They emphasize that the question of why they arrested Griggs is a question of intent, which ultimately should be put to a jury, rather than decided by the Court on summary judgment. Indeed, "[i]t is rarely appropriate on summary judgment for a district court to make a finding on state of mind." *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004) (citing *Alexander v. Wis. Dep't of Health & Family Serv.*, 263 F.3d 673, 681 (7th Cir. 2001); *Stumph v. Thomas & Skinner, Inc.*, 770 F.2d 93, 97 (7th Cir. 1985)). That is, "as a question of intent, it is properly put to the jury, not to the court on summary judgment." *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 632 (7th Cir. 2009) (citing *Payne*, 337 F.3d at 770). Generally speaking, "summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *Stumph*, 770 F.2d at 97 (quoting *Pfizer, Inc. v. Int'l Rectifier Corp.*, 538 F.2d 180, 185 (8th Cir. 1976)).

Furthermore, as explained above, once a plaintiff shows that the First Amendment violation was a motivating factor of the harm he is complaining of, the burden shifts to the defendant "to show that the harm would have occurred anyway." *Thayer*, 705 F.3d at 252 (citations omitted). "First Amendment rights are not absolute." *Braun v. Baldwin*, 346 F.3d 761,

763 (7th Cir. 2003). "Probable cause, if not a complete bar to [a plaintiff's] First Amendment retaliatory arrest claim, provides strong evidence that he would have been arrested regardless of any illegitimate animus." *Thayer*, 705 F.3d at 252 (citations omitted). "If retaliation is not the but-for cause of the arrest, 'the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind.'" *Id*. (quoting *Hartman*, 547 U.S. at 260).

The Court concluded earlier that material issues of fact exist concerning whether the Officers had probable cause to arrest Griggs for disorderly conduct, precluding the Court from granting Griggs's motion for partial summary judgment on his false arrest claim. That probable cause determination, in turn, will materially impact Griggs's retaliation claim under the First Amendment, as if the Officers can prove that there was probable cause to arrest Griggs, it will be "strong evidence" that Griggs's arrest would have occurred anyway. *Id*. Accordingly, material issues of fact preclude the Court from granting summary judgment on Griggs's First Amendment retaliation claim.[8]

## V. STATE LAW FALSE IMPRISONMENT AND FALSE ARREST CLAIMS

The Court need only briefly mention Griggs's state-law false imprisonment and false arrest claims. "Indiana Courts have used the terms 'false arrest' and 'false imprisonment'

---

[8] Because Griggs has not established that a federal constitutional violation was committed by the Officers, he cannot satisfy all of the elements of a failure to intervene claim, which includes showing "that any constitutional violation has been committed by a law enforcement official." *Abdelnabi v. Cook Cty.*, No. 15 CV 3161, 2017 WL 1246355, at *4 (N.D. Ill. Jan. 13, 2017) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Therefore, Griggs's motion for partial summary judgment on his failure to intervene claim will be denied as well.

Also, although Griggs raised the issue of qualified immunity in his opening brief, the Officers do not rely on this defense in their response brief (DE 38), and therefore, the Court will not address qualified immunity at this juncture. In any event, the Court notes that if the issue of qualified immunity "cannot be disentangled from disputed facts, the issue cannot be resolved without a trial." *Gonzalez v. Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (citation omitted).

interchangeably when a plaintiff's claim stems from detention by authorities without probable cause." *Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) (citations omitted). "A false arrest is one means of committing a false imprisonment, and *every false arrest has, at its core, a false imprisonment*." *Id.* (citation omitted). Griggs, too, addresses these claims together in his complaint and in his briefs. (DE 1 ¶¶ 2, 3, 11; 15; DE 36 at 23-25; DE 39 at 5-13).

Moreover, the elements of a federal claim and an Indiana claim for false imprisonment or false arrest are essentially identical. *See Bentz*, 577 F.3d at 779; *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003) ("[B]oth Indiana and federal law require the court to determine if there was probable cause for arrest, and both base the probable cause determination on whether a reasonable person, under the facts and circumstances encountered by the arresting officer, would believe that the suspect had committed or was committing a criminal offense."). In fact, the parties do not separately address Griggs's state law claims of false imprisonment and false arrest from their Fourth Amendment claims in their response and reply briefs. (DE 38 at 13-23; DE 39 at 5-13). Therefore, for the reasons already articulated *supra* with respect to Griggs's Fourth Amendment claims, the Court, too, will deny Griggs's motion for partial summary judgment on his state-law claims of false imprisonment and false arrest.

## VI. CONCLUSION

For the foregoing reasons, Griggs's motion for partial summary judgment (DE 35) will be DENIED. The Court confirms the final pretrial conference set for October 12, 2017, at 10:00 a.m. Counsel and the parties are to appear in person at the conference. The Court also confirms

the jury trial set to commence on November 13, 2017.  (DE 37).

SO ORDERED.

Entered this 21st day of September 2017.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge